**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DANIEL MORENO and TAYLOR RUMMEL, individually and on behalf of all others similarly situated,

Case No. 6:25-cv-01043-JSS-DCI

Plaintiffs,

v.

SAGE DENTAL MANAGEMENT, LLC d/b/a SAGE DENTAL,

Defendant.
___________________________________/

**DEFENDANT SAGE DENTAL MANAGEMENT, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant, Sage Dental Management, LLC ("Sage"), appearing by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby respectfully moves this Honorable Court for an order dismissing Plaintiffs' Class Action Complaint (the "Complaint"), and respectfully shows as follows:

## INTRODUCTION

Plaintiffs' Complaint fails to state any plausible claim against Sage. First, though it alleges that Sage's website tracks and discloses its users' Personally Identifiable Information ("PII") and Personal Health Information ("PHI") to LinkedIn and Google, the Complaint fails to allege sufficient facts to plausibly claim that Sage disclosed any personal information of *these particular plaintiffs*. Second, even

if the Complaint did allege such facts, it also admits that such disclosure would be impossible had the Plaintiffs not previously consented to allow those third parties to track their activities on third party websites when they consented to Google and LinkedIn's terms and conditions. Third, while Plaintiffs claim they "received targeted advertisements for similar products and services" after using Sage's website, their Complaint fails to allege sufficient facts to explain why this could only have been caused by a disclosure of Plaintiffs' PHI or PII to third parties rather than through other causes, and therefore causation is not properly alleged. Fourth, because Plaintiffs alleged Sage disclosed nothing more than Plaintiffs' names and the fact they made dental appointments with its providers, the Complaint fails to plead sufficient facts to establish that the alleged disclosure conferred any benefit on Sage. And fifth, where, as here, one of the parties to a so-called "communication" consented to its recording, there can be no Federal Wiretap Act claim.

For these reasons, Plaintiffs fail to state claims for violation of the Florida Secured Communications Act ("FSCA") or the Federal Wiretap Act, for breach of confidence, or for unjust enrichment. Amendment would be futile, and accordingly, Sage respectfully urges the Court to dismiss these claims—and Plaintiffs' entire Complaint—with prejudice.

## BACKGROUND AND COMPLAINT ALLEGATIONS

### I. Allegations in Operative Pleading

The following is taken from the Complaint: Sage is a dental practice with over 100 practices in Florida. (Dkt. 1 at ¶ 14). Like many dental practices, Sage owns a

website with which past and new customers may schedule an appointment. (*Id.* at ¶ 12, 14, 20). Plaintiffs, when booking their appointments, inputted alleged Personal Health Information ("PHI") including "the time and location of their dental appointment, the reason for their appointment, and the specific dentist they were seeing." (*Id.* at ¶ 9-11).

Plaintiffs' claims rest on their bare allegations that Sage "disclose[d] its patients' protected health information ("PHI") [and personally identifiable information ("PII")] to third parties, including LinkedIn and Google, for targeted advertising purposes" through a web of embedded code in its website. (*Id.* at ¶ 2, 8). Sage allegedly accomplished this by "cho[osing] to embed the LinkedIn Insight Tag and Google Analytics…on the Website, whereby they disclosed the confidential PHI of their patients with LinkedIn and Google for targeted advertising purposes; and did this without authorization or consent from its patients." (*Id.* at ¶ 15). Plaintiffs claim that "[a]fter booking appointments on the Sage Dental Website, Plaintiffs began receiving targeted advertisements for similar products and services." (*Id.* at ¶ 12). However, the Complaint otherwise offers no support for Plaintiffs' conclusory allegation that their use of Sage's website resulted in disclosure of their PHI or PII to third parties.

## II. LinkedIn and Google

### a. LinkedIn Insight

Plaintiffs admit that LinkedIn Insight is a tracking technology that LinkedIn uses to make advertising recommendations based off personal information gained

from monitoring *its existing users*. (*Id.* at 15, 37-39). More specifically, it is a "'[a] simple code snippet added to [a] website [that] can help you optimize your campaigns, retarget your website visitors, and learn more about your audiences[,]'" while being afforded first party cookie privacy exemptions. (*Id.* at 42-43).

**b. Google Analytics**

Plaintiffs allege Google Analytics is an analytics platform that is incorporated into various websites, allegedly including Sage's, by adding code to a website. (*Id.* at 69-70). "The [Google] code [inputted into Sage] also collects PII, such as IP addresses and device information related to the specific computing device a consumer (or patient) is using to access a website. The device information intercepted by Google includes the patient's operating system, operating system version, browser, language, and screen resolution." (*Id.* at 70). As with LinkedIn Insight, Plaintiffs admit that Google already had access to this information by virtue of the Plaintiffs logging into their Google accounts. (*Id.* at 13).

**c. Plaintiffs admit Google and LinkedIn already have their "Sensitive Information" and track their online activity.**

Plaintiffs have LinkedIn and Google accounts. (*Id.* at ¶ 12). When registering for their LinkedIn accounts, LinkedIn required each Plaintiff to input their "full legal names, genders, and email accounts." (*Id.* at ¶ 13). When registering for their Google account, Google required each Plaintiff to input their "full legal names, date of births, and genders." (*Id.*).

Plaintiffs admit that:

> Every time Plaintiffs access their Gmail account, Google collects information **related to their IP address** and electronic device (e.g. browser, operating system, screen resolution, etc.) and **stores it in a profile maintained by Google for targeted advertising purposes**. **Google also utilizes other features, such as generating specific User IDs, to track its users across web browsing sessions for identification purposes, as detailed below. Google utilizes all of these tracking features in order to build robust consumer profiles it can then leverage for targeted advertising purposes.**

(*Id.*) (emphasis added).

As for LinkedIn, Plaintiffs claim that LinkedIn's Insight Tag "track[s] users, even when third-party cookies are blocked." (*Id.* at 43). Specifically, "[w]hen a user who has signed in to LinkedIn (even if the user subsequently logs out) is browsing a website where the LinkedIn Insight Tag has been embedded, an HTTP request is sent using cookies, which includes information about the user's actions on the website." (*Id.* at 44).

But Plaintiffs acknowledge they *consented and agreed to LinkedIn's Privacy Policy and Cookie Policy*. (*Id.* at 49-50). They further admit that LinkedIn's Privacy Policy states: "we use cookies and similar technologies (e.g., pixels and ad tags) to collect data (e.g., device IDs) to recognize you and your device(s) on, off and across different services and devices where you have engaged with our Services. *We also allow some others to use cookies as described in our Cookie Policy."* (*Id.* at 52) (emphasis added).

In short, Plaintiffs admit that LinkedIn and/or Google already have **the only information at issue in this particular case -** their full legal name, date of birth, genders, and IP addresses, and their browsing activities across the internet with their

express consent. But they nevertheless allege, without support, that Sage disclosed this information, along with Plaintiffs' PHI, to LinkedIn and Google. This is not plausibly accurate, and there is no cognizable connection in this particular case between the claimed damage and Sage. Based on the allegations (and, in fact), Sage disclosed *nothing* to either LinkedIn or Google that the Plaintiffs had not disclose and consented to themselves.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A court considering a motion to dismiss must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I. Plaintiffs Failed to State a Claim Under the FSCA.

To allege a claim under the Florida Secured Communications Act ("FSCA"), a plaintiff must allege facts showing that there was a person who:

> (a) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or

> electronic communication;
>
> * * *
>
> (c) Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
>
> * * *
>
> (d) Intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

§ 934.03(1), Fla. Stat. (2024). Under this statute, "intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." § 934.02(3), Fla. Stat. (2024). The FSCA defines the "contents" of a communication to mean "any information concerning the *substance, purport, or meaning of the communication*." § 934.02(7), Fla. Stat. (emphasis added).

Because the FSCA is modeled after its federal counterpart, the Federal Wiretap Act, Florida courts follow federal courts as to the meaning of analogous provisions, including what constitutes "contents" of a communication. *See, e.g.*, *Minotty v. Baudo*, 42 So.3d 824, 831 (Fla. 4th DCA 2010). Contents, under the FSCA, has been defined to mean "(1) 'substance' means 'the characteristic and essential part,' (2) 'purport' means the 'meaning conveyed, professed or implied,' and (3) 'meaning' refers to 'the thing one intends to convey by language.'" *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, *3 (Fla.Cir.Ct. June 17, 2021).

**a. Plaintiffs failed to plausibly allege that Sage disclosed the contents of a communication protected by the FSCA.**

In *W.W. v. Orlando Health, Inc.*, No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892, *4 (M.D. Fla. Mar. 6, 2025), this Court weighed a motion to dismiss regarding the same claims Plaintiffs assert in this case. When considering whether the plaintiff met the minimum pleading standard to establish a claim for violation of the FSCA, this Court observed that when a plaintiff alleges that a defendants' website disclosed "**a substantive message about [the p]laintiffs' health concerns"** to third parties, this is sufficient to state a plausible claim that the disclosed information constituted 'contents' within the meaning of the Wiretap Act and similar state laws such as the FSCA. *Id.* at *4 (emphasis added) (citing *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024)). In *W.W.,* the plaintiff alleged she used the defendant's website to describe her medical conditions and seek treatment for them, and that she thereafter received targeted ads relating to the medical conditions and treatments she disclosed to the defendant. Considering those facts, this Court held that the plaintiff stated a plausible claim under the FSCA and Wiretap Act, and denied the motion to dismiss. *Id.*

This case is different. Here, Plaintiffs fail to meet this minimum pleading standard. Instead, their Complaint vaguely (and inaccurately) alleges that Sage "disclosed its patients' protected health information", which "includes, but is not necessarily limited to, the patient's reason for appointment, location of appointment, time for appointment, and doctor name." (Doc. 1 at ¶ 8). But Plaintiffs do not and cannot allege sufficient facts to show that Sage disclosed the contents of their

communication with Sage—which consists of the time, general category, and location of dental appointments—to LinkedIn or Google. While they claim they received targeted advertisements for "similar products and services" after using Sage's website, they fail to identify the services they requested from Sage, or the services advertised in the targeted ads.

Without clarification, "similar" products and services could simply refer to ads for other dentists' offices, which might have been provided or generated by Plaintiffs' use of LinkedIn and Google cookies regardless of whether or not they entered *any* information on Sage's website. Unlike in *W.W.*, Plaintiffs' vague allegations are insufficient to establish the disclosure of any PHI or PII, much less to establish a causal nexus between Plaintiffs' use of Sage's website and targeted advertisements. *See Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1322 (S.D. Fla. 2021) ("The Court must know what information was allegedly intercepted to determine whether it qualifies as content." (emphasis in original)).

Plaintiffs must plead facts that, if taken as true, establish that these ads could only have resulted from disclosure of the specific information they provided when using Sage's website. But their Complaint contains no such allegations. For example, Plaintiffs do not allege that they never searched the internet for dental services, let alone the same dental condition or procedure they booked through Sage's website.

Moreover, Plaintiffs provide no facts past conclusory allegations that *any* of their PHI was actually intercepted by Google. Instead, they allege that Sage "makes similar disclosures to Google, including the fact that a dental appointment is being

made at a Sage Dental location," about its patients generally. (Doc. 1 at ¶ 97). But this allegation merely suggests that a disclosure is possible, which is not the legal standard.

**b. If there was a disclosure, Plaintiffs consented to it.**

The Complaint's terminal vagueness is compounded by Plaintiffs' admission that both LinkedIn and Google were already tracking their online activities. Plaintiffs specifically admit that they consented to have their information shared by signing LinkedIn's privacy policy, which they acknowledge states that "[LinkedIn] also allow[s] some others to use cookies as described in our Cookie Policy."

Florida law permits interception of an electronic communication "when all of the parties to the communication have given prior consent to such interception." § 934.02(2)(d), Fla. Stat. (2024). When Plaintiffs agreed to LinkedIn's policy language and Sage allegedly embedded LinkedIn's code, which Plaintiffs concede, *all parties fully consented to information sharing through LinkedIn*. This meets Florida's exception outlined in § 934.02(2)(d). Sage respectfully submits that Plaintiffs' FSCA claim must be dismissed for this reason alone, as a matter of fact and law.

**II. Plaintiffs Failed to State a Claim Under the Federal Wiretap Act.**

Plaintiffs likewise fail to allege facts sufficient to state a claim under the Wiretap Act. Under the Act's one-party consent rule, a direct party to a communication cannot unlawfully intercept communications. 18 U.S.C. § 2511(2)(d) (no liability exists where "one of the parties to the communication has given prior consent" to the interception); *Ramos v. Delphi Behavioral Health Grp., LLC*, No. 21-11218, 2022 WL 1415856, at *1 (11th Cir. May 4, 2022) ("[I]t is lawful for an individual to intercept a communication

if he is a party to it." (citing 18 U.S.C. § 2511(2)(d))). As the party that allegedly installed the technologies at issue on its own website, Sage "necessarily consented to the use of those [technologies]" and their collection of the alleged communications between Plaintiffs and Sage. *R.S. v. Prime Healthcare Servs., Inc.*, No. 5:24-CV-00330-ODW (SPX), 2024 WL 3730609, at *3 (C.D. Cal. Aug. 7, 2024). Thus, there can be no actionable claim under the Federal Wiretap Act, unless some exception applies.

But under the facts alleged in the Complaint, none does. It is well-settled that where a plaintiff claims that a hospital's use of Pixel or other analytics tools on its website resulted in the alleged interception of the plaintiff's communications with the hospital, the "hospital is a party to the communication." *See, e.g.*, *id.* at *2. "[A] party to the communication may be liable [under the crime-tort exception] if the 'communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any [s]tate.'" *W.W.*, 2025 WL 722892, *6. "[T]he crime-tort exception 'requir[es] only "sufficient facts to support an inference that the offender intercepted the communication **for the purpose of** a tortious or criminal act that is independent of the intentional act of recording"' **and** that '"if, at the time of the recording, the offender *plans* to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act."'" *Id.* at *7 (quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)) (emphasis added). In *W.W.*, the plaintiff explicitly alleged that the defendant "intercepted the contents of her communications for the purposes of

violating the FSCA and HIPAA." *Id.* That is not the case here.

Here, Plaintiffs repeatedly allege that Sage disclosed the information in question for the purposes of advertising, not to violate FSCA or HIPAA. (Doc. 1 at ¶ 8, 11, 15, 96, 104, 150). Doubtless, Plaintiffs will point to its contradictory allegation in paragraph 153:

> Defendant intentionally intercepted the contents of Plaintiffs' and Class Members' electronic communications for the purpose of committing a criminal or tortious act in violation of the Constitution or laws of the United States or of any state, namely, HIPPA [sic] and invasion of privacy, among others.

But Plaintiffs' Complaint is devoid of *any* factual support for this conclusory statement. Plaintiffs do not allege that Sage intercepted any communications for any unlawful or criminal or tortious act *that is independent* of the intentional act of deploying commonplace website technology. In fact, Plaintiffs have done the opposite; at best, they allege that Sage was using Plaintiffs' information for advertising purposes. Accordingly, Plaintiffs' Complaint fails to state a viable claim for violation of the Wiretap Act, and Sage respectfully urges the Court to dismiss it.

## III. Plaintiffs Failed to State a Claim for Breach of Confidence.

As with Plaintiffs' FSCA claim, their claim for breach of confidence is undermined by the vagueness of their factual allegations. To prevail on a common law breach of confidence claim, a plaintiff must establish an "unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 932 (11th Cir. 2020) (en banc) ("A breach of confidence 'is rooted in the concept that

the law should recognize some relationships as confidential *to encourage uninhibited discussions between the parties involved*.'" (emphasis added)) (quotation omitted).

Here, Plaintiffs' Complaint fails to allege facts showing that the PII and PHI belonging to Plaintiffs was (1) purportedly entrusted to Sage when booking their appointments on the Website, (2) to be kept in confidence, and (3) revealed. Setting aside the absence of any such factual allegations, Plaintiffs acknowledge they agreed to have companies like Sage use cookies as described in LinkedIn's Privacy and/or Cookie Policy. Thus, to the extent Sage's website disclosed any of Plaintiffs' "intercepted" information to LinkedIn (which Sage flatly denies), Plaintiffs admit they consented to such disclosure. But even if they had not given prior consent, Plaintiffs nonetheless fail to plausibly plead that any subsequent targeted advertising occurred as a result of Sage's alleged disclosures, and not due to any tracking that was already taking place as a result of Plaintiffs' admitted use of Google or LinkedIn.

Again, Plaintiffs' vague allegations stand in stark contrast with the allegations made by the plaintiff in *W.W.* When denying the defendant's motion to dismiss the breach of confidence claim in that case, this Court underscored the connection between the information Plaintiff disclosed to the defendant's website—specifically complaints of ileostomy, heart pains, fatty liver disease, blacking out when standing up, and meningiomas—and the advertisements targeted to these specific conditions she received after doing so. *W.W.*, 2025 WL 722892, at *8.

By contrast, Plaintiffs here simply allege they made an appointment for dental services on Sage's website and received targeted ads for "similar" services. (Doc. 1 at

¶ 8). Without more information on what kind of services Plaintiffs sought from Sage and what kind of advertisements they allegedly received afterwards, Plaintiffs cannot plausibly allege that any confidential information was actually disclosed. Accordingly, Sage respectfully asks the Court to dismiss Plaintiffs' claim for breach of confidence.

**IV. Plaintiffs Failed to Allege a Claim Under Unjust Enrichment.**

Plaintiffs have not alleged sufficient facts to establish a claim for unjust enrichment under Florida law. "[T]he 'essential' elements of a claim for unjust enrichment are '(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.'" *W.W.*, 2025 WL 722892, *10 (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009)).

Here, Plaintiffs have failed to plead any facts showing that the information allegedly disclosed to LinkedIn and Google has *any*, let alone quantifiable, intrinsic economic value to Sage—*beyond mere scheduling*—that would support their conclusory allegations that the disclosed information conferred a benefit on Sage. Moreover, while Paragraph 39 of the Plaintiffs' Complaint explains Plaintiffs' own damages theory in this case, it fails to allege any direct economic benefit that Sage specifically would have received as a result of receiving the disclosed information. And even if Plaintiffs had included such allegations in their Complaint, these could not save Plaintiffs from the fact that they *agreed to disclose* this information by consenting to LinkedIn's Privacy and Cookie Policies. Moreover, as explained above, the Complaint is devoid of any factual

allegations that any benefit or information was directly provided to Google. Accordingly, Sage respectfully submits that Plaintiffs' unjust enrichment claim must be dismissed.

## CONCLUSION

Simply put, Plaintiffs' Complaint fails to allege plausible or sufficient facts sufficient to support any of its four claims against Sage including, but not limited to, a lack of plausible causation. Moreover, the claims are fatally undermined by Plaintiffs' admission that they consented to disclosure of certain information by virtue of using LinkedIn and Google before they ever ventured onto Sage's website. Accordingly, Sage respectfully asks that this Court dismiss the Complaint against it pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and award any such other and further relief as the Court may deem just and appropriate.

## LOCAL RULE 3.01(g) CERTIFICATION

On July 11, 2025, via a zoom meeting, and through various correspondence in July thereafter, the undersigned law firm had substantive conversations with Plaintiff's counsel, Stephen Beck, regarding resolution efforts and, ultimately, facts underlying the positions made in this Motion to Dismiss. The Parties were unable to reach an agreement as to any of the arguments raised in this Motion to Dismiss.

Respectfully submitted on August 7, 2025

**GORDON REES SCULLY MANSUKHANI LLP**

***/s/ Joseph A. Sacher*__________________**
Joseph A. Sacher, Esq.
Florida Bar No.: 174920
E-Mail: jsacher@grsm.com
E-Mail: aruff@grsm.com
100 S.E. Second Street, Suite 3900
Miami, FL 33131
Telephone: (305) 428-5339
**Counsel for Defendant, Sage Dental Management, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

***/s/Joseph A. Sacher*________________**
Joseph A. Sacher, Esq.