**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DANIEL MORENO and TAYLOR RUMMEL, individually and on behalf of all others similarly situated,

Case No. 6:25-cv-01043-JSS-DCI

Plaintiffs,

v.

SAGE DENTAL MANAGEMENT, LLC d/b/a SAGE DENTAL,

Defendant.
_________________________________/

**DEFENDANT SAGE DENTAL MANAGEMENT, LLC'S**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendant, Sage Dental Management, LLC ("Defendant" or "Sage"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby respectfully moves this Honorable Court for an order dismissing Plaintiffs' Amended Class Action Complaint (the "Amended Complaint"), and states:

## INTRODUCTION

In response to Defendant's meritorious Motion to Dismiss, Plaintiffs filed an Amended Complaint. However, the amended pleading is substantially similar to Plaintiffs' original pleading and again fails to state any plausible cause of action against Sage.

First, despite alleging that Sage's website tracks and discloses its users' Personally Identifiable Information ("PII") and Personal Health Information ("PHI")

to LinkedIn and Google, this is not true; and the Amended Complaint fails to allege sufficient facts to plausibly claim that Sage disclosed any personal information of *these plaintiffs* (or anybody).

Second, even if the Amended Complaint did contain these necessary allegations, it would not be sufficient to withstand dismissal. Notably, Plaintiffs admit that they previously consented to third parties tracking their activities on third party websites, including LinkedIn's terms and conditions.

Third, while Plaintiffs claim that they "receiv[ed] targeted advertisements for similar products and services" after using Sage's website, their Amended Complaint fails to allege sufficient facts to explain why this could only have been caused by a disclosure of Plaintiffs' PHI or PII to third parties rather than through other causes, such as their total online activity and related search history. Thus, Plaintiffs fail to satisfy the requisite element of causation.

Fourth, because Plaintiffs alleged that Sage disclosed nothing more than Plaintiffs' names, and the fact they made dental appointments with its providers, the Complaint fails to plead sufficient facts necessary to establish that the alleged disclosure conferred any actual benefit on Sage.

And, fifth, where, as here, one of the parties to a so-called "communication" consented to its recording, there can be no Federal Wiretap Act violation.

As more fully discussed below, Plaintiffs' latest amended pleading equally fails to state claims for violation of the Florida Secured Communications Act ("FSCA") or the Federal Wiretap Act, for breach of confidence, or for unjust enrichment. Because

further Amendment would be futile Sage respectfully urges the Court to dismiss these claims—and Plaintiffs' entire Amended Complaint—with prejudice.

## ALLEGED FACTUAL BACKGROUND

### I. Allegations In Operative Pleading

The following is taken from the Amended Complaint: Sage is a dental practice with over 100 practices in Florida. (Doc. 16 at ¶ 14). Like many dental practices, Sage owns a website with which past and new customers may schedule an appointment. (*Id.* at ¶¶ 12, 14, 20). Plaintiffs, when booking their appointments, inputted allegedly disclosed Personal Health Information ("PHI") including "the time and location of their dental appointment, the reason for their appointment, and the specific dentist they were seeing." (*Id.* at ¶¶ 9-11).

Plaintiffs' claims rest on their bare allegations that Sage "disclose[d] its patients' protected health information ("PHI") [and personally identifiable information ("PII")] to third parties, including LinkedIn and Google, for targeted advertising purposes" through a web of embedded code in its website. (*Id.* at ¶¶ 2, 8). Sage allegedly accomplished this by "cho[osing] to embed the LinkedIn Insight Tag and Google Analytics…on the Website, whereby they disclosed the confidential PHI of their patients with LinkedIn and Google for targeted advertising purposes; and did this without authorization or consent from its patients." (*Id.* at ¶ 15). Plaintiffs claim that "[a]fter booking appointments on the Sage Dental Website, Plaintiffs began receiving targeted advertisements for similar products and services." (*Id.* at ¶ 12). However, the Amended Complaint offers no support for Plaintiffs' conclusory allegation that their

use of Sage's website resulted in disclosure of *their* PHI or PII to third parties.

## II. LinkedIn and Google

### a. LinkedIn Insight

Plaintiffs admit that LinkedIn Insight is a tracking technology that LinkedIn uses to make advertising recommendations based off personal information gained from monitoring *its existing users*. (*Id.* at ¶¶ 15, 37-39, 44). More specifically, it is a "'[a] simple code snippet added to [a] website [that] can help you optimize your campaigns, retarget your website visitors, and learn more about your audiences[,]'" while being afforded first party cookie privacy exemptions. (*Id.* at ¶¶ 42-43).

### b. Google Analytics

Plaintiffs allege Google Analytics is an analytics platform that is incorporated into various websites, allegedly including Sage's, by adding code to a website. (*Id.* at ¶¶ 69-70). "The [Google] code [inputted into Sage] also collects PII, such as IP addresses and device information related to the specific computing device a consumer (or patient) is using to access a website. The device information intercepted by Google includes the patient's operating system, operating system version, browser, language, and screen resolution." (*Id.* at ¶ 70). As with LinkedIn Insight, Plaintiffs admit that Google already had access to this information by virtue of the Plaintiffs voluntarily logging into their Google accounts. (*Id.* at ¶ 13).

### c. Plaintiffs Admit Google And LinkedIn Already Have Their "Sensitive Information" And Track Their Online Activity

Plaintiffs actually admit that they have LinkedIn and Google accounts, which

is terminal for their claims. (*Id.* at ¶ 12). Critically, when registering for their LinkedIn accounts, LinkedIn required each Plaintiff to input their "full legal names, genders, and email accounts." (*Id.* at ¶ 13). Likewise, when registering for their Google account, Google required each Plaintiff to input their "full legal names, date of births, and genders." (*Id.*). Plaintiffs admit that:

> Every time Plaintiffs access their Gmail account, Google collects information **related to their IP address** and electronic device (e.g. browser, operating system, screen resolution, etc.) and **stores it in a profile maintained by Google for targeted advertising purposes**. **Google also utilizes other features, such as generating specific User IDs, to track its users across web browsing sessions for identification purposes, as detailed below. Google utilizes all of these tracking features in order to build robust consumer profiles it can then leverage for targeted advertising purposes.**

(*Id.*) (emphasis added).

As for LinkedIn, Plaintiffs claim that LinkedIn's Insight Tag "track[s] users, even when third-party cookies are blocked." (*Id.* at ¶ 43). Specifically, "[w]hen a user who has signed in to LinkedIn (even if the user subsequently logs out) is browsing a website where the LinkedIn Insight Tag has been embedded, an HTTP request is sent using cookies, which includes information about the user's actions on the website." (*Id.* at ¶ 44).

But, importantly, Plaintiffs also acknowledge that they *consented and agreed to LinkedIn's Privacy Policy and Cookie Policy*. (*Id.* at ¶¶ 13, 49-50). They further admit that LinkedIn's Privacy Policy states: "we use cookies and similar technologies (e.g., pixels and ad tags) to collect data (e.g., device IDs) to recognize you and your device(s) on,

off and across different services and devices where you have engaged with our Services. *We also allow some others to use cookies as described in our Cookie Policy."* (*Id.* at ¶ 52) (emphasis added).

In short, Plaintiffs' operative pleading plainly admits that LinkedIn and/or Google **already have the only specifically plead information at issue in this case -** Plaintiffs' full legal name, date of birth, genders, and IP addresses, and their browsing activities across the internet with their express consent. Nevertheless, Plaintiffs implausibly allege that Sage disclosed this information, along with Plaintiffs' PHI, to LinkedIn and Google. This is not plausibly accurate, and there is no cognizable causal connection in this particular case between the purported claimed damage and Sage. Bottom line: based on Plaintiffs' very own allegations (and, in fact) in the Amended Complaint, Sage disclosed *nothing* to either LinkedIn or Google that Plaintiffs had not already personally and voluntarily disclosed and consented to themselves.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A court considering a motion to dismiss must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I. Plaintiffs Failed To State A Claim Under The FSCA

To allege a claim under the Florida Secured Communications Act ("FSCA"), a plaintiff must allege facts showing that there was a person who:

> (a) Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication;
>
> * * *
>
> (c) Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
>
> * * *
>
> (d) Intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

§ 934.03(1), Fla. Stat. (2024). Under this statute, "intercept" is defined as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." § 934.02(3), Fla. Stat. (2024). The FSCA defines the "contents" of a communication to mean "any information concerning the *substance, purport, or meaning of the communication*." § 934.02(7), Fla. Stat. (emphasis added).

Because the FSCA is modeled after its federal counterpart, the Federal Wiretap Act, Florida courts follow federal courts as to the meaning of analogous provisions, including what constitutes "contents" of a communication. *See, e.g.*, *Minotty v. Baudo*,

42 So.3d 824, 831 (Fla. 4th DCA 2010). "Contents", under the FSCA, has been defined to mean "(1) 'substance' means 'the characteristic and essential part,' (2) 'purport' means the 'meaning conveyed, professed or implied,' and (3) 'meaning' refers to 'the thing one intends to convey by language.'" *Jacome v. Spirit Airlines Inc.*, No. 2021-000947-CA-01, 2021 WL 3087860, *3 (Fla.Cir.Ct. June 17, 2021).

**a. Plaintiffs Failed To Plausibly Allege That Sage Disclosed The Contents Of A Communication Protected By The FSCA**

In *W.W. v. Orlando Health, Inc.*, No. 6:24-CV-1068-JSS-RMN, 2025 WL 722892, *4 (M.D. Fla. Mar. 6, 2025), this Court weighed a motion to dismiss regarding the same claims Plaintiffs assert in this case. When considering whether the plaintiff met the minimum pleading standard to establish a claim for violation of the FSCA, this Court observed that, when a plaintiff alleges that a defendants' website disclosed "**a substantive message about [the p]laintiffs' health concerns"** to third parties, this is sufficient to state a plausible claim that the disclosed information constituted 'contents' within the meaning of the Wiretap Act and similar state laws such as the FSCA. *Id.* at *4 (emphasis added) (citing *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 902 (C.D. Cal. 2024)). There, the plaintiff alleged she used the defendant's website to describe her medical conditions and seek treatment for them, and that she subsequently received targeted ads relating to the medical conditions and treatments she disclosed to the defendant. Considering those facts, which are not present here, this Court held that the plaintiff stated a plausible claim under the FSCA and Wiretap Act, and denied the motion to dismiss. *Id.*

This case is factually different. Here, Plaintiffs fail to meet this minimum pleading standard. The Amended Complaint vaguely (and inaccurately) alleges that Sage "disclosed its patients' protected health information", which "includes, but is not necessarily limited to, the patient's reason for appointment, location of appointment, time for appointment, and doctor name." (Doc. 16 at ¶ 8).

Notably, however, Plaintiffs do not and cannot allege sufficient facts to show that Sage disclosed the contents of their communication with Sage—which consists of the time, general category, and location of dental appointments—to LinkedIn or Google. While Plaintiffs conclude that they received targeted advertisements for "similar products and services" after using Sage's website, they nevertheless fail to identify the purported services they requested from Sage, or the services allegedly advertised in the targeted ads.

Without specific clarification, "similar" products and services could simply refer to ads for other dentists' offices, offering general dental services, which might have been provided or generated by Plaintiffs' own use of LinkedIn and Google cookies regardless of whether or not they entered *any* information on Sage's website.

In their second pleading, Plaintiffs tacitly admit that they cannot now meet this Court's minimum pleading standard:

> 93. On previous iterations of Defendant's Website, including when Plaintiffs' booked their dental appointments, such information included more specificity as to the services being scheduled by Defendant's patients.

Doc. 16 at ¶ 93. Unlike in *W.W.*, Plaintiffs' vague and evasive allegations in the instant case are insufficient to establish the disclosure of any PHI or PII, much less to establish a causal nexus between Plaintiffs' use of Sage's website and targeted advertisements. *See Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1322 (S.D. Fla. 2021) ("The Court must know what information was allegedly intercepted to determine whether it qualifies as content." (emphasis in original)).

To be clear, Plaintiffs are attempting to use undefined, but allegedly intercepted, personal data as both a sword and shield. To avoid an open-ended fishing expedition as a matter of procedure, Plaintiffs' Amended Complaint is due to be dismissed and to proceed anonymously if privacy is truly their concern. *See A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) (plaintiffs' complaint contained specific allegations of dental procedures performed); *see also Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 816 (N.D. Cal. 2023). One way or another, Plaintiffs are necessarily held to the same pleading standards prescribed by the Federal Rules of Civil Procedure.

Plaintiffs must plead facts that, if taken as true, establish that these ads could only have resulted from disclosure of the specific information they provided when using Sage's website. But their newly-filed Amended Complaint is devoid of these essential allegations. For example, Plaintiffs fail to allege that they never searched the internet for dental services, let alone the same dental condition or procedure they booked through Sage's website, or that they have never booked similar procedures with other dental providers.

Moreover, Plaintiffs provide no allegations beyond bald conclusory allegations that *any* of their PHI was actually intercepted by Google. Instead, they merely allege that Sage "makes similar disclosures to Google, including the fact that a dental appointment is being made at a Sage Dental location," about its patients generally. (Doc. 16 at ¶ 98). This bare-bones allegation, alone, merely suggests that a disclosure is possible – but that is <u>not</u> the legal standard.

**b. If There Was A Disclosure, Plaintiffs Consented To It**

The Amended Complaint's terminal vagueness is compounded by Plaintiffs' repeated admission, now twice, that both LinkedIn and Google were already tracking their online activities. Plaintiffs specifically admit that they consented to have their information shared by signing LinkedIn's privacy policy, which they acknowledge states that "[LinkedIn] also allow[s] some others to use cookies as described in our Cookie Policy." (*Id.* at ¶ 52). Plaintiffs also confess that "[e]very time Plaintiffs access their Gmail account, Google collects information related to their IP address and electronic device (e.g. browser, operating system, screen resolution, etc.) and stores it in a profile maintained by Google for targeted advertising purposes. Google also utilizes other features, such as generating specific User IDs, to track its users across web browsing sessions for identification purposes, as detailed below." (*Id.* at ¶ 13). Plaintiffs, by conceding that they have Gmail accounts, necessarily agreed to Google's terms and conditions, including Google's privacy policy.

Florida law permits interception of an electronic communication "when all of the parties to the communication have given prior consent to such interception." §

934.03(2)(d), Fla. Stat. (2024). Plaintiffs quoted a portion of LinkedIn's privacy policy in its Amended Complaint. The entirety of the referenced terms actually state:

> We will only collect and process personal data about you where we have lawful bases. **Lawful bases include consent (where you have given consent)**, contract (where processing is necessary for the performance of a contract with you (e.g., to deliver the LinkedIn Services you have requested) and 'legitimate interests.'

LinkedIn, Privacy Policy, https://www.linkedin.com/legal/privacy-policy#key-terms-5, (emphasis added).[1]

When Plaintiffs agreed to LinkedIn's policy language and Sage allegedly embedded LinkedIn's code, *all parties fully consented to information sharing through LinkedIn*. Even if Plaintiffs argue their contractual agreement with LinkedIn or Google is insufficient to establish consent, Plaintiffs' second attempt to plead viable causes of action similarly fail to plead that their Account and Privacy Settings on LinkedIn and Gmail were properly adjusted to attempt to guard their web activity from being monitored or collected. Either theory of consent (failing to modify their settings, or expressly consenting to terms and conditions) meets Florida's exception outlined in § 934.03(2)(d). Sage respectfully submits that Plaintiffs' FSCA claim must be dismissed for this reason alone, as a matter of fact and law.

[1] "Under the doctrine of incorporation by reference, we may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186 (11th Cir. 2018). Plaintiffs' consent operates as a bar to recovery through the FSCA and is therefore central to Plaintiffs' claims. Here, Plaintiffs partially reference to LinkedIn's Privacy Agreement is quoted directly from LinkedIn's website and is undisputedly authentic.

## II. Plaintiffs Failed to State a Claim Under the Federal Wiretap Act

### a. Plaintiffs Cannot Meet The Crime-Tort Exception

Plaintiffs also fail to allege facts sufficient to state a claim under the Wiretap Act. Under the Act's one-party consent rule, a direct party to a communication cannot unlawfully intercept communications. 18 U.S.C. § 2511(2)(d) (no liability exists where "one of the parties to the communication has given prior consent" to the interception); *Ramos v. Delphi Behavioral Health Grp., LLC*, No. 21-11218, 2022 WL 1415856, at *1 (11th Cir. May 4, 2022) ("[I]t is lawful for an individual to intercept a communication if he is a party to it." (citing 18 U.S.C. § 2511(2)(d))).

As the party that allegedly installed the technologies at issue on its own website, Sage "necessarily consented to the use of those [technologies]" and their collection of the alleged communications between Plaintiffs and Sage. *R.S. v. Prime Healthcare Servs., Inc.*, No. 5:24-CV-00330-ODW (SPX), 2024 WL 3730609, at *3 (C.D. Cal. Aug. 7, 2024). Thus, there can be no actionable claim under the Federal Wiretap Act, unless a recognized exception applies.

However, under the facts alleged in the Amended Complaint, there are none. It is well-settled that where a plaintiff claims that a hospital's use of Pixel or other analytics tools on its website resulted in the alleged interception of the plaintiff's communications with the hospital, the "hospital is a party to the communication." *See, e.g.*, *id.* at *2. "[A] party to the communication may be liable [under the crime-tort exception] if the 'communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or

of any [s]tate.'" *W.W.*, 2025 WL 722892, *6. "[T]he crime-tort exception 'requir[es] only "sufficient facts to support an inference that the offender intercepted the communication **for the purpose of** a tortious or criminal act that is independent of the intentional act of recording"' **and** that '"if, at the time of the recording, the offender *plans* to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act."'" *Id.* at *7 (quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)) (emphasis added).

In a software tracking context, the crime tort exception requires a plaintiff to plausibly allege that the "'primary motivation' or 'determinative factor' in disclosing personal health information through the software-tracking technology to [LinkedIn] and Google was for the purpose of committing a criminal violation or tort, as opposed to commercial gain or convenience." *Goulart v. Cape Cod Healthcare, Inc.*, No. CV 25-10445-RGS, 2025 WL 1745732, *3 (D. Mass. June 24, 2025) ("[b]ecause there are no factual allegations in the Complaint from which the court could conclude…software-tracking technology [was installed] with the "primary motivation" of knowingly committing a violation of HIPAA or perpetrating a tort, the Complaint fails").

Here, Plaintiffs repeatedly allege that Sage disclosed the information in question for the purposes of advertising, not to violate FSCA or HIPAA. (Doc. 16 at ¶¶ 8, 11, 15, 97, 105, 151). Again, these allegations operate as Plaintiffs' repeated admissions that the crime tort exception is inapplicable. Doubtless, Plaintiffs will point to the contradictory allegation in paragraph 154:

> Defendant intentionally intercepted the contents of Plaintiffs' and Class

> Members' electronic communications for the purpose of committing a criminal or tortious act in violation of the Constitution or laws of the United States or of any state, namely, HIPPA [sic] and invasion of privacy, among others.

*Id.* at ¶ 154. However, once again, Plaintiffs' Complaint is devoid of *any* factual support for this bald conclusory statement. Plaintiffs fail, a second time, to allege facts that Sage intercepted any communications for any unlawful or criminal or tortious act *that is independent* of the intentional act of deploying commonplace website technology for commercial gain.

Further, Plaintiffs fail to establish that Sage's primary motivation for any alleged disclosure was **for the purpose** of committing a criminal violation or tort. In fact, Plaintiffs have done the opposite. Plaintiffs admit that Sage was using Plaintiffs' information for advertising purposes. Accordingly, Plaintiffs' Amended Complaint fails to state a viable claim for violation of the Wiretap Act, and Sage respectfully urges the Court to dismiss it.

**b. Plaintiffs Fail To Properly Plead The Crime-Tort Exception**

To properly plead that the crime tort exception applies, a plaintiff must allege *facts* that show the *plaintiff's*, not a potential class member's, protected health information was improperly disclosed. *See Hannant v. Culbertson*, No. 4:24-CV-04164-SLD-RLH, 2025 WL 2413894, *5 (C.D. Ill. Aug. 20, 2025) (plaintiff "provides no detail as to what information was disclosed that demonstrated her patient status or what activities she took with respect to the patient portal. As the caselaw discussed above demonstrates, an allegation that patient status was disclosed, standing alone, is

closer to a legal conclusion than a factual allegation").

Here, Plaintiffs allege that Sage disclosed "specific details about their dental appointments" and after booking their appointments, Plaintiffs began seeing "targeted advertisements for similar products and services." (Doc. 16 at ¶¶ 11, 12). In support of this vague allegation, Plaintiffs argue that "[t]he specific dental treatment received by the Plaintiffs has been omitted to protect their privacy." *Id.* at ¶ 11 n3. Littered throughout Plaintiffs' newly filed Amended Complaint are diagrams showing *potential* class member's alleged disclosures, but *not* the disclosures made by the operative Plaintiffs. Notably, in paragraphs 90-106 of the Amended Complaint, Plaintiffs plead legal conclusions pertaining to the *entire class*, not the personal experience or actions of Plaintiffs. Despite Plaintiffs' second pleading containing 175 paragraphs spanning 55 pages, Plaintiffs fail to provide any clarity or necessary detail, whatsoever, concerning what purported medical information was allegedly unlawfully disclosed. These blatant and repeated pleading deficiencies warrant dismissal, with prejudice.

## III. Plaintiffs Failed To State a Claim For Breach of Confidence

Plaintiffs' claim for breach of confidence is equally undermined by the vagueness of their factual allegations. To prevail on a common law breach of confidence claim, a plaintiff must establish an "unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 932 (11th Cir. 2020) (en banc) ("A breach of confidence 'is rooted in the concept that the law should recognize some relationships as confidential *to encourage uninhibited discussions*

*between the parties involved*.'" (emphasis added)) (quotation omitted).

Here, Plaintiffs' Amended Complaint fails to allege facts showing that the PII and PHI belonging to Plaintiffs was (1) purportedly entrusted to Sage when booking their appointments on the Website; (2) to be kept in confidence; and (3) revealed. Setting aside the absence of these required factual allegations, Plaintiffs acknowledge they agreed to have companies like Sage use cookies such as described in LinkedIn's Privacy and/or Cookie Policy.

Again, Plaintiffs' second pleading fails to allege that their privacy settings were properly adjusted to prevent information disclosure. Thus, to the extent Sage's website disclosed any of Plaintiffs' "intercepted" information to LinkedIn or Google (which Sage flatly denies), Plaintiffs admit they consented to such disclosure. But even if they had not given prior consent, Plaintiffs nonetheless fail to plausibly plead that any subsequent targeted advertising occurred as a result of Sage's alleged disclosures, and not due to any tracking that was already taking place as a result of Plaintiffs' admitted use of Google or LinkedIn.

Plaintiffs' vague allegations stand in stark contrast with the factual allegations made by the plaintiff in *W.W.* When denying the defendant's motion to dismiss the breach of confidence claim in that case, this Court underscored the connection between the information the plaintiff disclosed to the defendant's website—specifically complaints of ileostomy, heart pains, fatty liver disease, blacking out when standing up, and meningiomas—and the advertisements targeted to these specific conditions she received after doing so. *W.W.*, 2025 WL 722892, at *8.

By contrast, Plaintiffs, here, simply allege they made an appointment for dental services on Sage's website and received targeted ads for "similar" services. (Doc. 16 at ¶ 12). Without more information on what kind of services Plaintiffs sought from Sage and what kind of advertisements they allegedly received afterwards, or their internet usage, Plaintiffs cannot plausibly allege that any confidential information was actually disclosed, or that Sage was the cause of any purported harm. Accordingly, Sage respectfully asks the Court to dismiss Plaintiffs' claim for breach of confidence.

**IV. Plaintiffs Failed To Allege A Claim Under Unjust Enrichment**

Plaintiffs have also failed to allege sufficient facts to establish a claim for unjust enrichment under Florida law. "[T]he 'essential' elements of a claim for unjust enrichment are '(1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.'" *W.W.*, 2025 WL 722892, *10 (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009)).

Here, Plaintiffs have failed to plead any facts showing that the information allegedly disclosed to LinkedIn and Google has *any*, let alone quantifiable, intrinsic economic value to Sage—*beyond mere scheduling*—that would support their conclusory allegations that the disclosed information conferred a benefit on Sage. Moreover, while Paragraph 39 of the Plaintiffs' Amended Complaint attempts to set forth Plaintiffs' purported damages, it fails to allege any direct economic benefit that Sage specifically would have received as a result of receiving the disclosed information. In other words,

any alleged improper disclosure may lead to an economic benefit for a third party, but there is no basis to establish an economic benefit for Sage.

Even if Plaintiffs had included such allegations in the Amended Complaint, the simple fact remains – Plaintiffs *agreed to disclose* their information by consenting to LinkedIn's Privacy and Cookie Policies and maintaining a Gmail account. Moreover, as explained above, the Amended Complaint is devoid of any factual allegations that any benefit or information was directly provided to Sage. Accordingly, Sage respectfully submits that Plaintiffs' unjust enrichment claim must also be dismissed.

## CONCLUSION

Simply put, Plaintiffs' Amended Complaint fails to allege plausible or sufficient facts sufficient to support any of its four asserted causes of action against Sage including, but not limited to, a lack of plausible causation. Moreover, the claims are fatally undermined by Plaintiffs' repeated admission that they consented to disclosure of certain information by virtue of using LinkedIn and Google before they ever ventured onto Sage's website. Accordingly, Sage respectfully asks that this Court dismiss the Amended Complaint pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted, and award any such other and further relief as the Court may deem just and appropriate.

## LOCAL RULE 3.01(g) CERTIFICATION

Starting on July 11, 2025, via a zoom meeting, and through various correspondence in July thereafter, the undersigned law firm had substantive conversations with Plaintiff's counsel, Stephen Beck, regarding resolution efforts and,

ultimately, facts underlying the positions made in the original Motion to Dismiss , and on September 25, 2025, further addressed resolution in the context of this renewed Motion to Dismiss. The Parties were unable to reach an agreement as to any of the arguments raised in this Motion to Dismiss.

Respectfully submitted on September 26, 2025.

**GORDON REES SCULLY MANSUKHANI LLP**

***/s/ Joseph A. Sacher***
**Joseph A. Sacher, Esq.**
Florida Bar No.: 174920
**David Jaksic, Esq.**
Florida Bar No. 1060538
E-Mail: jsacher@grsm.com
E-Mail: djaksic@grsm.com
E-Mail: aruff@grsm.com
100 S.E. Second Street, Suite 3900
Miami, FL 33131
Telephone: (305) 428-5339
**Counsel for Defendant, Sage Dental Management, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

***/s/Joseph A. Sacher***
Joseph A. Sacher, Esq.