**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

DANIEL MORENO and TAYLOR RUMMEL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

SAGE DENTAL MANAGEMENT, LLC d/b/a SAGE DENTAL,

Defendant.

Case No. 6:25-cv-01043-JSS

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Congress and the Florida Legislature recognize the importance of maintaining the privacy of patients' protected health information ("PHI") and personally identifiable information ("PII"). *See* 16 C.F.R. § 313; Fla. Stat. §456.057; *see W.W. v. Orlando Health*, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025) (Sneed, J.) (denying the defendant's motion to dismiss in an analogous healthcare tracking case); *D.S. v. Tallahassee Mem'l HealthCare*, 2024 WL 2318621, at *1–2 (N.D. Fla. May 22, 2024) (same); *Cyr. v. Orlando Health, Inc.,* 8:23cv588WJF-CPT, ECF No. 37 (M.D. Fla. July 5, 2023). Despite Defendant Sage Dental Management, LLC's ("Defendant") duty to prevent patients' sensitive and confidential health information from unlawful use and disclosure, Defendant intercepts and discloses this

information to LinkedIn Corporation ("LinkedIn") and Google LLC ("Google") (collectively "Third Parties") when patients enter details and book appointments on mysagedental.com (the "Website").

Plaintiffs Daniel Moreno and Taylor Rummel (collectively, "Plaintiffs") are Florida residents who accessed Defendant's Website to book dental appointments. *See* Plaintiffs' First Amended Complaint (ECF No. 16) ("Compl.") ¶¶ 9–13. Despite reasonable expectations of confidentiality, the confidential information they provided in connection to their dental appointment bookings was intercepted by Defendant, via its use of the LinkedIn Insight Tag and Google Analytics (the "Tracking Technologies")—and simultaneously disclosed this information to Third Parties. Compl. ¶¶ 9–13, 35–86. This includes private, and legally protected information such as patient status, date of birth, type of appointment, appointment day, appointment time, provider, etc. Compl. ¶¶ 87–106. Such disclosures were not made to provide Plaintiffs with services, but rather, to bombard them with targeted advertising. Compl. ¶¶ 1–13, 15. This conduct is an egregious violation of Defendant's duties as a medical provider and is unlawful under both state and federal law. Compl. ¶¶ 15, 19–34, 127–175.

Defendant now moves to dismiss Plaintiffs' Complaint. *See* Defendant's Motion to Dismiss Plaintiffs' Class Action Complaint (ECF No. 22) ("MTD"). However, nearly all of Defendant's arguments are premised on misstatements of

both the facts and the law. For the reasons set forth herein, Plaintiffs respectfully request this Court deny Defendant's Motion in its entirety.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must include 'enough facts to state a claim to relief that a is plausible on its face.'" *Hunt v. Aimco Properties, L.P.,* 814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp*., 693 F.3d 1333, 1335 (11th Cir. 2012); *Ashcroft v. Iqba*l, 556 U.S. 662, 678 (2009).

A court considering a 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits-but may also consider documents referred to in the complaint that are central to the claim and whose authenticity is undisputed. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "Dismissal pursuant to Rule 12(b)(6) is not appropriate unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F3.d 1269, 1273 (11th Cir. 2004) (citation and quotation omitted).

# ARGUMENT

## I. Defendant Cannot Escape Liability By Incorporating Third Party Privacy Policies

Defendant's Motion is riddled with attempts to escape liability by asserting that Defendant "disclosed nothing to either LinkedIn or Google that Plaintiffs had not already personally and voluntarily disclosed and consented." MTD at 6. However, Defendant misrepresents Plaintiffs' allegations and the privacy policies of the Third Parties.

*First*, Defendant's consent argument, which it raises repeatedly throughout the Motion, is premised on its failed attempt to recast the facts in a light more favorable to its own argument by ignoring paragraphs that don't support its position. *See, e.g.* MTD at 3–6, 11–12, 19. Courts consistently find a motion to dismiss is not the proper stage to resolve factual disputes. Indeed, such motions are designed to test the legal sufficiency of the complaint. *See e.g.*, *Page v. Postmaster Gen. & Chief Exec. Officer of U.S. Postal Serv.*, 493 F. App'x 994, 995 (11th Cir. 2012) ("In adjudicating a motion to dismiss, the district court may not resolve factual disputes") (citing *Chappell v. Goltsman*, 186 F.2d 215, 218 (5th Cir.1950); *cf. Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990) (indicating that, under Rule 12(b)(6), the existence of disputed material facts precludes the district court from granting a motion to dismiss)).

*Second,* Defendant's argument mischaracterizes Plaintiffs' allegations, which are premised upon Defendant's unlawful implementation of the Tracking Technologies. *See generally* Compl. Defendant opines that Plaintiffs' admissions that "they have LinkedIn and Google accounts" make their claims are unsustainable (MTD at 4–5), supposedly because "LinkedIn and/or Google already have only the specifically plead information in this case." MTD at 6. However, Plaintiffs' claims do not hinge on whether the Third Parties already have their PII, but rather, whether they have their PHI. Compl. ¶¶ 127–175. The Defendant cannot attempt to escape liability by suggesting the contrary, and courts consistently reject such arguments at this stage. *See , e.g., In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 793-94 (N.D. Cal. 2022) (doubting that a reasonable user would understand Meta's privacy policy as consenting to the surreptitious disclosure of protected health information); *Doe v. Microsoft Corp*., No. 2:23-cv-00718-JCC, 2023 WL 8780879, at *6 (W.D. Wash. Dec. 19, 2023) (similarly doubting that Kaiser Permanente's general data collection disclosure in its privacy policy would inform a reasonable user that it extended to "personal health information").

Plaintiffs' allegations are bolstered by Defendant and Third Parties ability to profit by linking Plaintiffs' PHI—such as patient status and booking details—to their PII. Compl. ¶¶ 1–13, 15, 35–106. Furthermore, any consent Plaintiffs gave to the Third Parties is invalid because (1) Defendant's conduct is unlawful, and (2) consent

is distinct from the ***authorization*** HIPAA requires a covered entity to obtain before it discloses information for marketing purposes. *See infra* Sec. II-B.

*Third*, even if this Court incorporates LinkedIn and Google's privacy policies and finds that Plaintiffs consented to LinkedIn and Google's tracking, it should also recognize the Third Parties' acknowledgement that it is unlawful for HIPAA covered entities to use the Tracking Technologies on pages where patients input sensitive and confidential health information.[1]

## II. Plaintiffs Adequately Allege Violations Of The FSCA

### A. Plaintiffs Adequately Alleged Disclosure Of "Contents" Under The FSCA

Defendant insists "Plaintiffs do not and cannot allege sufficient facts to show that [Defendant] disclosed the contents of their communication with [Defendant]—which consists of the time, general category, and location of dental appointments—to LinkedIn or Google." MTD at 9. That is wrong.

*First,* the Florida Security of Communications Act (the "FSCA") and the Federal Wiretapping Act (the "ECPA") both define 'contents' broadly,

[1] LINKEDIN, *LinkedIn Insight Tag FAQs*, https://www.linkedin.com/help/linkedin/answer/a427660#:~:text=Important%20to%20know,may%20not%20collect%20sensitive%20data ("Consistent with our terms, the Insight Tag should not be installed on web pages that collect or contain Sensitive Data. This can include pages offering specific health-related or financial services or products to consumers"); GOOGLE, *HIPAA and Google Analytics*, https://support.google.com/analytics/answer/13297105?hl=en ("Customers must refrain from using Google Analytics in any way that may create obligations under HIPAA for Google.")

encompassing "any information concerning the substance, purport, or meaning of that communication." 16 U.S.C. §2510(8); Fla. Stat. § 934.02(7). In health care cases involving wiretapping statutes analogous to the FSCA, various federal courts, including this Court, have held that PII and PHI intercepted through pixel tracking technologies qualifies as "contents." *See e.g., W.W.*, 2025 WL 722892, at *6 (finding the health information intercepted and disclosed by the defendant was "content" under FSCA and the ECPA); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *5–7 (N.D. Ill. Sept. 9, 2024); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 885, 903 (C.D. Cal. 2024); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 712, 718, 720 (D. Minn. 2023); *Doe v. Microsoft Corp.*, 2023 WL 8780879, at *9 (W.D. Wash. Dec. 19, 2023).

*Second*, Defendant's attempt to distinguish this Court's holding in *W.W.* is unpersuasive. MTD at 8. In *W.W.* this Court explained the plaintiff alleged contents because "[t]he information at issue . . . [was] the message Plaintiff sought to convey to Defendant through its website—information related to . . . medical conditions and providers . . . [constituted contents because it contained] the substance, purport, or meaning of her communications." *W.W.*, 2025 WL 722892, at *5. Here, Plaintiffs' allegations are substantially similar, alleging Defendant disclosed patient status, the time and location of their appointment, the reason for the appointment, the specific provider they booked an appointment with, and their date of birth. Compl. ¶¶ 11,

87–106. Plaintiffs also allege, on information and belief, "previous iterations of Defendant's Website [included] more specificity as to the services being scheduled . . . ." *Id.* ¶ 93. Plaintiffs even provide screenshots as to how such interceptions and disclosures occur. *See id.*, Figures 2-6. At the pleading stage, nothing more is required.

*Third*, Defendant tries, and fails, to recast its unlawful disclosures of patients' PII and PHI as benign, suggesting "Plaintiffs' . . . allegations . . . are insufficient to establish the disclosure of any PHI or PII[.]" MTD at 10. Defendant appears to concede that if Plaintiffs could show "the time, general category, and location of dental appointments" were disclosed to Third Parties, this would constitute "content" for purposes of liability under the FSCA. MTD at 9. Plaintiffs have done exactly that, providing specific details about Defendant's disclosures in the Complaint, including supporting figures. Compl. ¶¶87–106; Fig. 2 (disclosing reason for the appointment, *e.g.,* general dentist exam); Fig. 3 (disclosing request to book an appointment for extractions); Fig. 4 (disclosing an appointment was booked for root canals); Fig. 5 (disclosing patient date of birth); Fig. 6 (disclosing name of dentist, day, and time of appointment).

Furthermore, Defendant's conduct is unlawful because patient status alone is legally protected PHI under HIPAA, such that Defendant was prohibited from disclosing Plaintiffs' identity in conjunction with them booking an appointment at

their dental practice. 45 C.F.R. § 160.103; 78 Fed. Reg. 5642 (Jan. 25, 2013) (observing it would be a HIPAA violation for a covered entity to disclose a list of identifiable patient information); *Arvidson v. Buchar*, 2018 WL 10613032, at *10 (V.I. Super. Ct. June 6, 2018); *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d at 792 (finding that "patient status is protected health information.").

Defendant baselessly argues that "Plaintiffs must plead facts that…establish that these ads could only have resulted from disclosure of the specific information they provided when using Sage's website." MTD at 10. Not so. Plaintiffs make such allegations to further support the argument that their confidential health information was intercepted and disclosed by Defendant. However, Plaintiffs also establish that their protected health information was intercepted by Defendant based upon Plaintiffs use of Defendant's Website as well as establishing the nature and function of the Third Parties' tracking software that was in place when Plaintiffs navigated Defendant's Website to schedule their medical appointments. Compl. ¶¶ 9-12, Figures 2-6. Under federal pleading standards, nothing more is required. *In re Meta Pixel*, 647 F.Supp.3d at 803 ("Plaintiffs do not merely object to receiving targeted advertising based on their health information. The heart of plaintiffs' complaint—and the core injury asserted therein—is that Meta is accessing their health information in violation of state and federal law.").

*Finally*, given the highly technical nature of the tracking technologies at issue, Plaintiffs request this Court adopt the position of the *D.S.* court and "decline[] to make any dispositive merits determinations on a motion to dismiss where the rule 8 bar is low." *D.S. v. Tallahassee Mem'l HealthCare*, 2024 WL 2318621, at *1 (N.D. Fla. May 22, 2024) (citing *Cyr. V. Orlando Health, Inc.*, 8:23cv588WJF-CPT, ECF No. (M.D. Fla. July 5, 2023) (denying motion to dismiss in an analogous case because the Court found "little utility in a pleadings repartee at the beginning of a case that is as complicated and well-lawyered as this one")).

### B. Defendant's Consent Argument Ignores HIPAA's Authorization Requirements For Protected Health Information

Defendant demonstrates a fundamental misunderstanding of Plaintiffs' allegations by asserting it is shielded from liability because Plaintiffs "consented" to Google and LinkedIn's privacy policies. *See supra* Sec. I.

*First,* Plaintiffs allegations are premised on Defendant's ***unlawful*** implementation of the tracking technologies. *See generally*, Compl. Indeed, Defendant's Motion fails to recognize that its status as a HIPAA covered entity changes the inquiry. *Compare* MTD (failing to acknowledge its status as a covered entity) *with* 42 U.S.C. § 1395x(r);[2] *and* Fla. Stat. § 456.057(2)(c) (dental hygienists);

[2] HIPAA adopts the definition of health care provider in 42 U.S.C. § 1320d(3), which includes "a provider of medical or other health services (as defined in section 1395x(s) of this title)." 42 U.S.C. § 1395x(s)(1) includes "physician's services" and in § 1395x(r) physician is defined to includes "a doctor of . . . dental medicine who is legally authorized to practice dentistry."

§ 456.057(2)(k) (encompassing dentist licensed under ch. 466). Because Defendant failed to implement the technologies in a lawful manner (i.e., in compliance with its obligations under state and federal law), Plaintiffs did not "consent" to this unlawful interception of their data. Compl. ¶¶ 19–34, 87–106, 127–175.

*Second*, HIPAA distinguishes between "consent" and "authorization." As a regulated entity under HIPAA, Defendant must adhere to the authorization requirements when PHI and PII are being disclosed to third parties (including, as is the case here, LinkedIn and Google). Compl. ¶¶ 1–8; 35–106. While consent may allow certain uses or disclosures of PHI for treatment, payment, or healthcare operations, it is not sufficient for uses or disclosures that require an authorization under 45 C.F.R. § 164.508, which encompasses most uses, including marketing. *Compare* 45 C.F.R. § 164.506 (consent) *with* 45 C.F.R. § 164.508 (authorizations). Likewise, in Florida "[a]bsent a specific written release or authorization permitting ***utilization of patient information for solicitation or marketing the sale of goods or services***, ***any use of that information for those purposes is prohibited.***" Fla. Stat. § 456.057(7)(b).

*Third*, it is a well-established legal principle that consent is rarely a defense to criminal conduct, and here, Defendant's conduct falls squarely within what the U.S. Department of Health and Human Services has warned is unlawful:

> Regulated entities [those to which HIPAA applies] are not permitted to use tracking technologies in a manner that would result in

> impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures.

Compl. ¶ 27 (citations omitted); see also Compl. ¶¶ 19–34 (FTC and HHS pronouncements).

*Finally*, due to the surreptitious nature of the interceptions at issue, Plaintiffs would have no way of knowing whether their protected health information was being unlawfully intercepted and disclosed to the Third Parties. This is bolstered by the fact that a reasonable consumer would not expect such disclosures of health information to occur. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789–90 (N.D. Cal. 2019) (concluding that a lack of consent allegation is sufficient if a reasonable user "could plausibly have interpreted the contract language as not disclosing" the practice at issue).

## III. Plaintiffs Adequately Alleged An ECPA Claim

### A. Defendant's Conduct Falls Squarely Within the Crime-Tort Exception

Defendant baselessly asserts that "Plaintiffs . . . fail[] to state a viable claim for violation of the Wiretap Act." MTD. at 15. In an attempt to support this baseless argument, Defendant "cherry-picks" Plaintiffs' allegations pertaining to targeted advertising whilst disregarding the extensive allegations wherein Plaintiffs discuss Defendant's various violations of state and federal law (HIPAA, the FSCA, and Fla.

Stat. §456.057). *Compare* MTD at 14; *with* Compl. ¶¶1–8, 9–13, 19–34 (outlining how Defendant fails to comply with the HIPAA Privacy Rule despite clear pronouncements by the FTC and HHS), 127–136 (FSCA). For example, in order to use patients—including Plaintiffs and Class Members—PII and PHI for marketing purposes, Defendant needed to receive a HIPAA compliant ***authorization***. *Compare* 45 C.F.R. § 164.506 (consent) *with* 45 C.F.R. § 164.508 (authorizations); *and* Fla. Stat. § 456.057(7)(b) (Florida authorization requirement). It did not. *Id.*; Compl. ¶ 21.

*W.W.* is instructive on this issue. *See* 2025 WL 722892, at *6–7. In *W.W.*, this Court declined to dismiss the plaintiff's ECPA claim where the plaintiff alleged violations of the FSCA and HIPAA because there was "no basis in the text of the Wiretap Act's crime-tort exception to conclude these allegations [were] insufficient". *Id; see also D.S.*, 2024 WL 2318621, at *1–2; *Cyr*, 8:23-cv-588-WFJ-CPT, ECF No. 37 (denying an MTD on analogous facts). Defendant relies on the out-of-circuit case *Goulart v. Cape Code Healthcare, Inc.,* to support its position that a plaintiff must allege "the primary motivation or determinative factor . . . was for the purpose of committing a criminal violation or tort." MTD at 14 (citing 2025 WL 1745732, *3 (D. Mass. 2025)). However, this Court rejected that same reasoning in *W.W.*, instead finding allegations of a HIPAA violation sufficient to sustain a wiretapping claim because "the crime-tort exception requires only

sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording and that if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act." *W.W.*, 2025 WL 722892, at *7 (cleaned up).

Defendant's argument that "Plaintiffs repeatedly allege that [Defendant] disclosed the information in question for the purposes of advertising, not to violate FSCA or HIPAA" overlooks Section A of the Complaint wherein Plaintiffs allege how Defendant's use of tracking tools violates various provisions of HIPAA. Compl. ¶¶ 19–34, 87–106. Moreover, marketing (i.e. advertising) without HIPAA and state law compliant authorization is unlawful. Compl. ¶ 21; 45 C.F.R. § 164.508 (authorizations); Fla. Stat. § 456.057(7)(b) (state law equivalent of HIPAA). Indeed, numerous courts throughout the country have found pleading violations of HIPAA sufficient to sustain ECPA claims at this early juncture. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 796 ("existence of a lawful purpose does not sanitize the interception was also made for an illegitimate purpose"); *Kurowski v. Rush Sys. for Health,* 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 797; *Group Health*, 2023 WL 8850243, *8*;* *Cousin v. Sharp,* 2023 WL 8007350, at *5; *Cooper v. Mount Sinai Health Sys., Inc.*,

742 F. Supp. 3d 369, 379 (S.D.N.Y. 2024). Many of these courts also have found allegations of a profit motive sufficient to support the crime-tort exception. *See, e.g., Group Health,* 2023 WL 8850243, at *8; *In re Meta Pixel, 647 F. Supp. 3d at* 797; *Brown v. Google LLC,* 685 F. Supp. 3d 909, 934–35 (N.D. Cal. 2023) (upholding ECPA on a motion for summary judgment).

**B. Plaintiffs State A Claim Under The ECPA**

Defendant claims Plaintiffs' fail to properly plead the crime-tort exception because they failed to "allege facts that show the [Plaintiffs], not a potential class member's protected health information was improperly disclosed." MTD at 15. That is wrong.

The Rule 8 pleading standard does not require detailed factual allegations. Indeed, "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era." *W.W.*, 2025 WL 722892 at *2. Defendant's position, in which it requests the Court to adopt the reasoning of *Hannant v. Culbertson*, would require Plaintiffs to reconstruct, from memory, each and every communication they made via the Website, replicate the network traffic, and provide custom-tailored images to prove Defendant violated their privacy when they were not on notice of Defendant's actions until April 2025. *Compare* MTD at 15–16; *and* 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025); *with* Compl. ¶¶ 9–10 (Plaintiffs booking appointments in July 2024 and June 2023), 115 (Plaintiffs did not discover

interception until April 2025). The allegations in the Complaint put Defendant on notice that Plaintiffs used the Website to communicate sensitive and confidential information—including patient status, date of birth, provider information, appointment details (e.g., reason, date and time), etc.—by showing similar disclosures investigation of counsel revealed were made to LinkedIn and Google during the booking process. Compl. ¶¶ 87–106, Figs 2–6.

To burden Plaintiffs with showing exactly how Defendant's ***own*** installation of the Tracking Technologies resulted in the interception of their sensitive and confidential PHI and PII which was disseminated to LinkedIn and Google without their knowledge, authorization, or consent prior to discovery goes well beyond the Rule 8 Pleading Standard. Fed. R. Civ. P. 8; Compl., ¶¶ 9–13, 15, 19–106. Plaintiffs' specific allegations pertaining to themselves, coupled with their allegations for a class ***which they are a part of***, when accepted as true and read in their totality, are plausible to support an ECPA claim based on the crime-tort exception at this early stage.

At a minimum, Plaintiffs request this Court decline to answer whether the crime-tort exception applies until summary judgment or trial once there is a more robust factual record. *W.W.*, 2025 WL 722892, * 7; *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 720; *Cooper*, 742 F. Supp. 3d at 381; *D.S.*, 2024 WL 2318621, at *1; *Cyr*, No. 8:23-cv-588-WFJ-CPT, ECF No. 37.

## IV. Plaintiffs State A Claim For Breach Of Confidence

Defendant asserts "Plaintiffs' claim for beach of confidence is . . . undermined by the vagueness of their factual allegations." MTD at 16. That is wrong.

"A breach of confidence involves the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." *Desue v. 20/20 Eye Care Network, Inc.*, 2022 WL 796367, at *9 (S.D. Fla. Mar. 15, 2022) (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 932 (11th Cir. 2020)). Defendant, with no case law to support its assertion, attempts to write-in an additional element to this claim by suggesting Plaintiffs need to disclose the type of ads they received to prove a breach. But that is not what the law requires. Plaintiffs' Complaint clearly alleges facts to support a claim for breach of confidence. Compl. ¶¶ 161–68. *First*, Plaintiffs allege they disclosed their PII and PHI to Defendant (a HIPAA covered entity) while scheduling their appointment. Compl. ¶¶ 9–11. *Second*, they allege Defendant disclosed this information to Third Parties without consent. Compl. ¶¶ 8, 11, 87–106. *Third*, Defendant disclosed nonpublic information learned in the scope of the dentist-patient relationship in the form of PHI (patient status,[3] date of birth, provider,

[3] Patient status alone is recognized as protected under HIPAA. *See, e.g.,* 65 Fed. Reg. 82717)(Dec. 28, 2000)(selling patient list to marketing firm violates HIPAA); 67 Fed. Reg. 53186 (Aug. 14, 2002)(requiring prior written ***authorization*** to disclose PHI for marketing communications); 78 Fed. Reg. 5642 (Jan. 25, 2013)(disclosure of patient name, address, or identification number violates HIPAA); *see also* 45 C.F.R. § 164.510(1–2).

appointment type, appointment date, and appointment time) and PII (e.g., cid, IP address, browser fingerprinting, etc.). Compl. ¶¶ 87–106, Figs. 1–6.

Defendant's claim that "Plaintiffs cannot plausibly allege that any confidential information was actually disclosed" conveniently overlooks paragraphs 87 through 106 of the Complaint, wherein Plaintiffs detail the information that is disclosed during the appointment booking process (Compl.¶¶ 87–106, Figs. 2–6 (showing transmissions of code disclosed by Defendant to Third Parties)), as well as Plaintiffs allegations detailing how the LinkedIn Insight Tag and Google Analytics tracking technologies—which were installed on the Website by Defendant—work. Compl. ¶¶ 35–86.

This Court found substantially similar allegations sufficient to state a breach of confidence claim, emphasizing "the connection between the information the plaintiff disclosed to the defendant's website—specifically complaints of [medical conditions]—and the advertisements targeted to these specific conditions she received after doing so." *W.W.*, 2025 WL 722892, at *8.

Defendant's argument that Plaintiffs consented to the disclosure fails for the same reasons discussed above regarding the FSCA claim. General website terms do not constitute meaningful consent to the specific disclosure of sensitive medical information to advertising companies.

Finally, Defendant's argument related to targeted advertisements is a red herring. Plaintiffs make such allegations to further support the argument that their confidential health information was intercepted and disclosed by Defendant. However, Plaintiffs also establish that their protected health information was intercepted by Defendant based upon Plaintiffs use of Defendant's Website as well as establishing the nature and function of the Third Parties' tracking software that was in place when Plaintiffs navigated Defendant's Website to schedule their medical appointments. Compl. ¶¶ 9-12, Figures 2-6. Under federal pleading standards, nothing more is required.

## V. Plaintiffs State A Claim For Unjust Enrichment

Defendant errs in claiming "Plaintiffs have failed to plead any facts showing that the information allegedly disclosed to LinkedIn and Google has any . . . economic value to [Defendant]." MTD at 18. That is wrong.

If Defendant truly received no benefit from the Tracking Technologies, there would be no reason to employ them. Here, the Complaint clearly alleges Defendant utilized the Tracking Technologies—i.e. the LinkedIn Insight Tag and Google Analytics—for "targeted advertising purposes" (which it profits from) and that Plaintiffs would not have booked an appointment with Defendant if they knew Defendant was sharing their PHI with unknown third parties, both of which confer economic benefit on Defendant. Compl. ¶¶ 8, 11–12, 15, 97, 105–106, 151; *see also*

*id.* ¶ 172 ("Defendant consciously collected and used this information for its own gain, providing Defendant with economic, intangible, and other benefits, including substantial monetary compensation.").

Moreover, it is well established when analyzing unjust enrichment claims "whether a defendant benefitted at the plaintiff's expense . . . 'is a factual question not appropriately resolved on a motion to dismiss.'" *W.W.*, 2025 WL 722892, at *10 (M.D. Fla. Mar. 6, 2025) (citing *Daniel v. Navient Sols., LLC*, 328 F. Supp. 3d 1319, 1326 (M.D. Fla. 2018) (quoting S*hands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 899 So. 2d 1222, 1228 (Fla. Dist. Ct. App. 2005))).[4]

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in full. Alternatively, if the Motion is granted in any respect, Plaintiffs request leave to amend. *Forman v. Davi*s, 371 U.S. 178, 182 (1962).

Dated: October 17, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *_/s/ Stephen A. Beck_*
Stephen A. Beck

Sarah N. Westcot
Stephen A. Beck
701 Brickell Avenue, Suite 2100
Miami, FL 33133
Telephone: (305) 330-5512

[4] *See supra Sec. I, Sec II-B* (rebutting Defendant's argument regarding consent).

Facsimile: (305) 679-9006
Email: swestcot@bursor.com
sbeck@bursor.com

*Counsel for Plaintiffs*